United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL FAAOLA, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. C 09-02327 WHA |
| v. | Related to: |
| GES EXPOSITION SERVICES, INC., a Nevada corporation, and DOE ONE through and including DOE ONE HUNDRED, | No. C 09-02394 WHA |
| Defendants. / | |
| PAUL FAAOLA, individually and on behalf of all others similarly situated, | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND PURSUANT TO 28 U.S.C. 1447(c)** |
| Plaintiffs, | |
| v. | |
| FREEMAN DECORATING SERVICES, INC., a Texas corporation, and DOE ONE through and including DOE ONE HUNDRED, | |
| Defendants. / | |

**INTRODUCTION**

In this proposed class action, plaintiff moves to remand two related cases, *Faaola v. GES Exposition Services, Inc.* ("GES"), Case No. 09-02327 WHA, and *Faaola v. Freeman Decorating Services, Inc.* ("Freeman"), Case No. 09-02394 WHA, to the Superior Court of

1  California for the County of San Francisco. Plaintiff makes this motion on the following
2  grounds: (1) Section 301 of the Labor Management Relations Act ("LMRA") does not preempt
3  plaintiff's state claims and therefore original jurisdiction does not lie, and (2) defendant's
4  untimely filing of the Notice of Removal constitutes a procedural defect. Defendants have
5  moved to dismiss plaintiff's first, third and fourth claims on the basis that they are preempted by
6  Section 301. Defendants also move to dismiss plaintiff's second claim for failure to state
7  sufficient facts to support a claim. This order finds that federal question jurisdiction is lacking
8  because plaintiff's first, third and fourth claims are not preempted by federal statute. As such, no
9  supplementary jurisdiction exists over the second claim, which is not preempted by Section 301.
10 Plaintiff's motion to remand the related cases to the Superior Court of California for the County
11 of San Francisco is **GRANTED**. Defendants' motion to dismiss plaintiff's complaint, being moot,
12 is **DENIED**.

**STATEMENT**

14 Paul Faaola is a former employee of defendants and was hired to work as a driver, forklift
15 operator, hostler, and/or loader at multiple locations in San Francisco, including the Bill Graham
16 Civic Auditorium and Moscone Center. Defendants provided event services to conventions and
17 trade shows. At the time of his employment, Faaola was a member of the union Brotherhood of
18 Teamsters and Auto Truck Drivers Local 85, which maintained uniform Collective Bargaining
19 Agreements ("CBA") with GES, Freeman, and various other companies.

20 Faaola alleges that defendants hired union members on a temporary basis and discharged
21 them without immediately paying final wages. "Defendant[s] would routinely withhold final
22 payment to persons laid off and/or discharged until no sooner than the next regularly scheduled
23 payday, regardless of the employee's actual last day of work" (GES Compl. at ¶ 9). At the
24 hearing, plaintiff's counsel noted that employees who worked "move-out assignments" had
25 the expectation of being paid at the conclusion of the event. Faaola claims that the practice
26 of delaying payment was done purposely. He also claims it violated several sections of the
27 California Labor Code. Section 201(a) reads in relevant part: "If an employer discharges an
28 employee, the wages earned and unpaid at the time of the discharge are due and payable

immediately." If an employer willfully fails to pay final wages, then he must pay waiting-time penalties under Section 203. That section reads: "[W]ages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Faaola first filed separate suits with identical claims against GES and Freeman in state court. Faaola sought to represent a class of former and current union members to whom defendants had previously tendered paychecks (*id.* at 17). Defendants then removed the actions to federal court on federal question jurisdiction. The two cases were related. Faaola now moves, pursuant to 28 U.S.C. 1447(c), to remand the cases to the Superior Court of California for the County of San Francisco, where three similar cases involving the same CBAs are pending. GES and Freeman move to dismiss each of plaintiff's state claims under Rule 12(b)(6). GES and Freeman also request judicial notice of the existence of the various CBAs and several newspaper ads concerning the Bill Graham Civic Auditorium and Moscone Center.

**ANALYSIS**

A plaintiff's complaint must present a federal question on its face for a court to have federal question jurisdiction over state claims. Absent this, jurisdiction may still lie if a federal statute completely preempts an area of state law. Falling in this category is Section 301 of the LMRA. Section 301(a) provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. 185. "[W]hen resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).[1]

Section 301 is no easy ticket into federal court. While its preemptive force extends to "most state-law actions that require interpretation of labor agreements, . . . not every claim which requires a court to refer to the language of a labor-management agreement is necessarily pre-empted." *Associated Builders & Contractors, Inc. v. Local 302 Int'l Broth. of Elec.*

---

[1] Internal citations are omitted unless otherwise indicated.

3

1 *Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997). The Ninth Circuit has stressed that "in the context of § 301 complete preemption, the term 'interpret' is defined narrowly — it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Co.*, 208 F.3d 1102, 1108 (9th Cir. 2000).

Under Rule 201(b) of Federal Rules of Evidence, courts may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Judicial notice is mandatory when a party requests judicial notice and provides the court with necessary information. Fed. R. Evid. 201(d). Here, the CBA between plaintiff's union and GES, Freeman, and other related companies is the proper subject of judicial notice. This order finds that the CBA is necessary for determining whether plaintiff's claims are preempted on the basis of "substantial dependence" on CBA content.

This order also finds that event ads placed in newspapers are the proper subjects of judicial notice. Defendants have submitted them as evidence of the fact that the Bill Graham Civic Auditorium and Moscone Center, where plaintiff worked, are often venues of live theatrical and concert events. Such evidence pertains to defendants' claim of exemption under California Labor Code Section 201.9, discussed below. Plaintiff objects that the evidence is inadmissible. Newspaper articles are of course mere hearsay if offered for proof of the matter asserted. *E.g., Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005); *Larez v. City of Los Angeles*, 946 F.2d 630, 643 (9th Cir. 1991). Here, however, the articles are offered as proof of the articles themselves, which merely show that the venues were sometimes advertised as hosting live theatrical and concert events.

**1.     INTERPRETATION OF THE CBA.**

Plaintiff argues that its state claims are not preempted by Section 301 because they are not substantially dependent on an interpretation of the CBA. He is correct.

It is not necessary to apply the Ninth Circuit's test in *Jimeno v. Mobil Oil*, 66 F.3d 1514, 1522–23 (9th Cir. 1994), to resolve this matter. In that decision, the Ninth Circuit undertook a

4

1   three-pronged inquiry to determine whether a disability discrimination claim brought under
2   California's Fair Employment and Housing Act was preempted by Section 301.[2]  The Ninth
3   Circuit has only employed this inquiry in factually similar situations.  *See Espinal v. Northwest*
4   *Airlines*, 90 F.3d 1452, 1457 (9th Cir. 1996) (using the *Jimeno* framework to assess an airline
5   worker's discrimination claim under California's Fair Employment and Housing Act).

6         Here, the issue can be addressed more simply.  Faaola's state claims revolve around
7   the question of whether GES and Freeman owe waiting-time penalties to former employees
8   for failing to pay wages immediately upon discharge.  The only CBA provision that speaks
9   to employee wages is Article X, Section 6.  The section is entitled "Payday" and provides,
10  "Wednesday of each week shall be established as the regular payday for all employees provided
11  that, if such payday falls on a paid holiday, the preceding work day shall be payday.
12  Employers shall not hold back more than one (1) week's pay."

13        Defendants claim that Section 6 is ambiguous because it expressly allows the employer
14  to hold back wages until the next regular payday without saying whether it applies to existing
15  *and* discharged employees.  No other section addresses the pay schedule of discharged
16  employees.  Consequently, any interpretation of the CBA to resolve plaintiff's claims turns on
17  this section.  It is well established that collective bargaining agreements "[l]ike other contracts,
18  must be read as a whole and in light of the law relating to it when made."  *Int'l Broth. of*
19  *Elec. Workers, Local 387, AFL-CIO v. N.L.R.B.*, 788 F.2d 1412, 1414 (9th Cir. 1986) (quoting
20  *Mastro Plastics Corp. v. N.L.R.B.*, 350 U.S. 270, 279 (1956)).

21        The only reasonable construction of Section 6 is that its policy concerning regular
22  payment of wages applies only to regular employees.  Article X is entitled "Work Rules."
23  Other sections within Article X unmistakably lay out rules for *existing* employees, such as
24  requirements and procedures for leaves of absence, health coverage, and operations of
25  machinery.  There are no rules in Article X describing the discharge of employees or alternative

---

[2] The *Jimeno* test is as follows:  (1) Does the CBA contain provisions that govern the actions giving rise to the state claim?  (2) Has the state articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA?  (3) Has the state shown an intent not to allow its prohibition to be altered or removed by private contract?  Preemption occurs only if the answer to (1) is "yes" and the answer to either (2) or (3) is "no."  *Jimeno v. Mobil Oil*, 66 F.3d at 1522–23.

5

1  payment schedules upon discharge. This suggests that the contracting parties did not have
2  discharged employees in mind when drafting Section 6. Furthermore, the language of Section 6
3  is wholly consistent with other sections in the same article. For instance, Section 5 discusses
4  the granting of time off to vote in any general election. This rule clearly concerns rights of
5  *existing* employees but the language referencing them as in Section 6 simply states "all
6  employees." Taking into account the language, structure and organization of the entire
7  labor contract — required to effect a proper interpretation — the meaning is unambiguous.
8  Resolution of plaintiff's claims cannot possibly turn on an interpretation of the CBA as no
9  other provision is relevant. There is no federal question jurisdiction when plaintiff's state claims
10 are not preempted by federal law. This is just an attempt to manufacture federal subject-matter
11 jurisdiction.

12 Defendants attempt to argue that waiting-time penalties cannot be assessed without a
13 finding of whether its employees were actually "discharged." They claim this requires analysis
14 of the CBA to determine if a class member was a "seniority" or "casual employee" and on a
15 "move-in" or "move-out" assignment as a different label carried different expectations of
16 future employment. Article II, Section 2 provides the distinction between seniority employees
17 and casual employees with the former consisting of workers who worked over thirty days.
18 The section is neither uncertain nor ambiguous. All a court has to do in making the relevant
19 factual determinations is to read Article II, Section 2 and apply its terms — this does not
20 constitute an "interpretation" of the CBA.

21 Defendants' reliance on *Firestone v. Southern California Gas Co.*, 219 F.3d 1063,
22 1066 (9th Cir. 2000), is also misguided. In that case, the parties clashed over whether the
23 plaintiffs rightfully received a "premium wage rate" for overtime work in accordance with
24 their CBA. Each side disagreed as to the CBA meaning of "regular rate." Because of this
25 dispute, the plaintiffs' state claims were necessarily dependent upon analysis of the CBA and
26 therefore preempted by Section 301. *Firestone* is clearly inapposite inasmuch as our case does
27 not present a similar dispute.
28

6

### 2. CALIFORNIA LABOR CODE SECTION 201.9.

Section 201.9 provides an exception to the rule in Section 201 that employers must pay immediate wages upon discharging employees. Under Section 201.9, employees who are hired to work at *theatrical and concert venues* may "establish by express terms in their collective bargaining agreement the time limits for payment of wages to an employee who is discharged or laid off." GES and Freeman argue that Faaola worked at qualifying venues and that the CBA contained an express waiver of their right to immediate final wages.

Even if Section 201.9 were applicable, defendants still would not be able to claim exemption to the requirement that they pay immediate wages to discharged employees. For a waiver to be effective, the Ninth Circuit has held that "the CBA must include 'clear and unmistakable' language waiving the covered employee's state right." *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1054 (9th Cir. 2003). Article X, Section 6 of the CBA does not satisfy this requirement. As discussed before, the payday provision does not expressly provide that the employer's "hold-back" option extends to discharged employees. It also cannot be construed in this manner when reading the contract as a whole. Because the CBA does not express a waiver in "clear and unmistakable language," defendants are not exempt from complying with California Labor Code Section 203.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to remand on the grounds that federal question jurisdiction is lacking is **GRANTED**. Plaintiff's state claims are not substantially dependent on analysis of the CBA. Accordingly, they are not preempted by Section 301 of the LMRA. Being moot, defendants' motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 7, 2009.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

7